UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| TRAVIS ROBINSON, Individually and for Others Similarly Situated<br><br>v.<br><br>KIEWIT MINING GROUP INC. | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Travis Robinson (Robinson) brings this class and collective action to recover unpaid wages and other damages from Kiewit Mining Group Inc. (Kiewit).

2. Kiewit employed Robinson as one of its Hourly Employees (defined below) in Alaska.

3. Kiewit pays Robinson and the other Hourly Employees by the hour.

4. Robinson and the other Hourly Employees regularly work more than 40 hours a workweek.

5. However, Kiewit does not pay Robinson and the other Hourly Employees for all their hours worked, including overtime hours.

6. Rather, Kiewit requires Robinson and the other Hourly Employees to gather tools and equipment necessary to perform their job duties, suit out in protective clothing and safety gear necessary to safely perform their job duties, while on Kiewit's premises, all prior to being "clocked in."

7. Likewise, Kiewit requires Robinson and the other Hourly Employees to change out of and store their safety gear and protective clothing, store their tools and equipment, and wash up, while on Kiewit's premises, after being "clocked out." (¶¶ 6-7 together, Kiewit's "pre/post shift off the clock policy").

8. But Kiewit does not pay Robinson and the other Hourly Employees for the time they spend donning and doffing their safety gear and protective clothing, gathering and storing their tools and equipment, and washing-up, "off the clock," before and after their shifts.

9. Kiewit's pre/post shift off the clock policy violates the Fair Labor Standards Act (FLSA) and Alaska Wage and Hour Act (AWHA) by depriving Robinson and the other Hourly Employees of overtime wages when they work in excess of 40 hours in a workweek.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

12. This Court has general personal jurisdiction over Kiewit because it maintains its principal place of business in Omaha, Nebraska.

13. Venue is proper because Kiewit maintains its principal place of business in Omaha, Nebraska, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

14. Kiewit has employed Robinson as an operator utility tech 4 from approximately February 2021 through November 2023.

15. Throughout his employment, Kiewit subjected Robinson to its pre/post shift off the clock policy.

16. Robinson's written consent is attached as **Exhibit 1**.

17. Robinson brings this class and collective action on behalf of himself and other Kiewit employees on whom Kiewit imposed its pre/post shift off the clock policy.

18. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Kiewit employees who worked in Alaska at a facility registered with the Mine Safety and Health Administration (MSHA) during the last three years (the "FLSA Collective Members").**

19. The putative Alaska class of similarly situated employees is defined as:

> **All hourly Kiewit employees who worked in Alaska at a facility registered with the MSHA during the last two years through final resolution of this action (the "Alaska Class Members").**

20. The FLSA Collective Members and the Alaska Class members are collectively referred to as the "Hourly Employees."

21. Kiewit is a Delaware corporation with its principal place of business in Omaha, Nebraska.

22. Kiewit may be served with process through its registered agent: **C T Corporation, 5601 South 59th Street Lincoln, Nebraska 68516**.

## FLSA COVERAGE

23. At all relevant times, Kiewit was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

24. At all relevant times, Kiewit was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

25. At all relevant times, Kiewit was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

26. At all relevant times, Kiewit had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

27. At all relevant times, Robinson and the other Hourly Employees were Kiewit's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

28. At all relevant times, Robinson and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

29. "Kiewit specializes in mine management, production, infrastructure construction, and maintenance, offering some of the most highly skilled and experienced professionals in the industry."[1]

30. To meet its business objectives, Kiewit employs workers, including Robinson and the other Hourly Employees.

31. For example, Kiewit employed Robinson as a haul truck driver and dozer operator from approximately March 2022 until October 2024 at the Manh Choh gold mine in Alaska.

32. As a haul truck driver and dozer operator Robinson's job duties included operating haul trucks and heavy equipment to construct roads and move various grades of gold ore and waste dirt throughout the mine as necessary and directed.

33. Robinson's job duties likewise included attending safety and production meetings, donning and doffing his safety gear and protective clothing, gathering and storing tools and equipment, and washing up, on Kiewit's premises, before and after his scheduled shifts.

34. Throughout his employment, Robinson's "on the clock" hours worked were "recorded" by Kiewit.

35. Thus, Kiewit's employment records reflect the number of hours Kiewit "recorded" that Robinson worked each week.

---

[1] https://www.kiewit.com/markets/mining/ (last visited February 27, 2025).

36. Throughout his employment, Robinson regularly worked more than 40 hours a workweek.

37. Indeed, throughout his employment, Kiewit typically "recorded" that Robinson worked 11 to 12 hours a day "on the clock" and 7 days a week for 2 weeks on (77 to 84 hours a week), followed by a week off.

38. And Kiewit paid Robinson approximately $41.50 an hour.

39. But throughout his employment, Kiewit did not pay Robinson for all his hours worked.

40. Instead, throughout his employment, Kiewit subjected Robinson to its pre/post shift off the clock policy.

41. Specifically, Kiewit required Robinson to attend daily safety and production meetings, dress out in protective clothing and safety gear (including hard hat, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves), gather tools and equipment (including hand tools) fundamentally necessary to performing his job duties, while on Kiewit's premises, all "off the clock," and without compensation.

42. This took Robinson approximately 30 to 40 minutes each workday.

43. Robinson could not perform his principal job duties in accordance with Kiewit's policies, procedures, and expectations without attending these meetings and this protective clothing, safety gear, tools, and equipment.

44. Robinson could not safely perform his principal job duties in accordance with Kiewit's policies, procedures, and expectations without attending daily safety and production meetings, this protective clothing, safety gear, tools, and equipment.

45. Indeed, much of the gear Robinson utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

46. Attending meetings, donning protective clothing and safety gear, and gathering tools and equipment are therefore integral and indispensable work duties for Robinson.

47. Likewise, Kiewit required Robinson to travel from his worksite in the mine, remove and store his safety gear and protective clothing, store his tools and equipment, and wash up each day after the end of his shift, all "off the clock" and without compensation.

48. This took Robinson approximately 10 to 15 minutes each workday.

49. Robinson could not perform his job duties in accordance with Kiewit's policies, procedures, and expectations without removing and storing this safety gear and protective clothing, storing his tools and equipment, and washing up each workday.

50. Robinson could not safely perform his job duties in accordance with Kiewit's policies, procedures, and expectations without removing and storing this safety gear and protective clothing, storing his tools and equipment, and washing up each day.

51. The removal of safety gear and protective clothing, storing his tools and equipment, and washing up each day are therefore integral and indispensable work duties for Robinson.

52. But under its pre/post shift off the clock policy, Kiewit did not compensate him for the same.

53. Thus, because of its pre/post shift off the clock policy, Kiewit failed to pay Robinson overtime wages for all his overtime hours worked when Robinson worked in excess of 12 hours in a day or 40 hours in a week, in violation of the FLSA and AWHA.

54. Robinson and the other Hourly Employees perform their jobs under Kiewit's supervision and use materials, equipment, and technology Kiewit approves and supplies.

55. Kiewit requires Robinson and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

56. Robinson's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Kiewit.

57. At the end of each pay period, Robinson and the other Hourly Employees receive wages from Kiewit that are determined by common systems and methods that Kiewit selects and controls.

58. Likewise, Kiewit typically "records" the other Hourly Employees' working 7 days a week for two weeks on for 11 to 12 hours (77 to 84 hours a week), followed by a week off.

59. But, just as with Robinson, Kiewit fails to pay the other Hourly Employees for all their hours worked.

60. Indeed, Kiewit uniformly subjects the other Hourly Employees to the same or similar pre/post shift off the clock policy it imposed on Robinson.

61. Specifically, just as with Robinson, Kiewit requires them to arrive on Kiewit's premises, attend safety and production meetings, dress out in their protective clothing and safety gear (including hard hat, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves), gather tools and equipment (including hand tools) fundamentally necessary to performing their jobs extracting and processing gold, prior to their shifts, "off the clock" and without compensation.

62. And Kiewit requires them to travel from their workstations, remove and store their safety gear and protective clothing, store their tools and equipment, and wash up after their shifts, likewise, "off the clock" and without compensation.

63. And like Robinson, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

64. But, like Robinson, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before and/or after their shifts.

65. Thus, just as with Robinson, Kiewit does not pay the other Hourly Employees for this work they are required to perform "off the clock" before and after their scheduled shifts.

66. And, just as with Robinson, these integral and indispensable job duties take the other Hourly Employees approximately 40 to 55 minutes to complete each workday.

67. Kiewit fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing compensable work "off the clock" on its premises that Kiewit does not want performed.

68. And Kiewit knows, should know, or recklessly disregards whether Robinson and the other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

69. Thus, Kiewit requests, suffers, permits, or allows Robinson and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

70. Despite accepting the benefits, Kiewit does not pay Robinson and the other Hourly Employees for the compensable work they perform "off the clock" before and after their shifts.

71. Thus, under Kiewit's uniform pre/post shift off the clock policy, Robinson and the other Hourly Employees are denied overtime wages for the compensable work they perform "off the clock" before and after their scheduled shifts during workweeks in which they work more than 8 hours in a day or 40 hours, in violation of the FLSA.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

72. Robinson brings his claims as a class and collective action under the AWHA pursuant to FED. R. CIV. P 23 and Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

73. Like Robinson, the other Hourly Employees are victimized by Kiewit's pre/post shift off the clock policy.

74. Other Hourly Employees worked with Robinson and indicated they were paid in the same manner, performed similar work, and were subject to Kiewit's same pre/post shift off the clock policy.

75. Based on his experience with Kiewit, Robinson is aware Kiewit's pre/post shift off the clock policy was imposed on other Hourly Employees.

76. The Hourly Employees are similarly situated in the most relevant respects.

77. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages.

78. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

79. Rather, Kiewit's pre/post shift off the clock policy renders Robinson and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

80. Kiewit's records reflect the number of "on the clock" hours the Hourly Employees were "recorded" as working each week.

81. The back wages owed to Robinson and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

82. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Kiewit's records, and there is no detraction from the common nucleus of liability facts.

83. Therefore, the issue of damages does not preclude class or collective treatment.

84. Robinson's experiences are therefore typical of the experiences of the other Hourly Employees.

85. Robinson has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

86. Like each Hourly Employee, Robinson has an interest in obtaining the unpaid wages owed under federal law.

87. Robinson and his counsel will fairly and adequately protect the interests of the Hourly Employees.

88. Robinson retained counsel with significant experience in handling complex class and collective action litigation.

89. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Kiewit will reap the unjust benefits of violating the FLSA and AWHA.

90. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

91. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Kiewit.

92. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

93. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

94. Among the common questions of law and fact are:

    a. Whether Kiewit imposed its pre/post shift off the clock policy on the Hourly Employees;

    b. Whether Kiewit's pre/post shift off the clock policy deprived the Hourly Employees of overtime compensation for all overtime hours worked;

    c.    Whether Kiewit failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

    d.    Whether Kiewit's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

    e.    Whether Kiewit's violations were willful.

95. As part of its regular business practices, Kiewit intentionally, willfully, and repeatedly violated the FLSA and AWHA with respect to Robinson and the other Hourly Employees.

96. Kiewit's pre/post shift off the clock policy deprived Robinson and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—for overtime hours worked, in willful violation of the FLSA.

97. There are many similarly situated Hourly Employees who have been denied overtime wages for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join it.

98. The Hourly Employees are known to Kiewit, are readily identifiable, and can be located through Kiewit's business and personnel records.

### KIEWIT'S VIOLATIONS WERE WILLFUL

99. Kiewit knew it employed the Hourly Employees.

100. Kiewit knew it was subject to the FLSA's overtime provisions.

101. Kiewit knew Robinson and the other Hourly Employees were its non-exempt employees entitled to overtime pay.

102. Kiewit knew the FLSA required it to pay non-exempt employees, including Robinson and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

103. Kiewit knew Robinson and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because Kiewit management recorded their "on the clock" hours via its timekeeping system.

104. Kiewit knew it paid the Hourly Employees according to its pre/post shift off the clock policy.

105. Kiewit knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

106. Kiewit knew it required the Hourly Employees to attend meetings, don and doff safety gear and protective clothing, gather and store tools and equipment, and wash-up, "off the clock."

107. Kiewit controlled the Hourly Employees' work procedures.

108. Kiewit knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Kiewit.

109. Kiewit knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties with Kiewit.

110. Kiewit knew the Hourly Employees routinely performed this daily, required "off the clock" work for Kiewit's predominant benefit.

111. In other words, Kiewit knew the Hourly Employees performed compensable work (*e.g.*, attending meetings, donning/doffing their safety gear and protective clothing, gathering and storing tools and equipment, and washing-up) "off the clock" and without compensation.

112. And Kiewit knew the FLSA required it to pay Robinson and the other Hourly Employees at least 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek.

113. Kiewit knew Robinson and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

114. Thus, Kiewit knew, should have known, or recklessly disregarded whether it failed to pay Robinson and the other Hourly Employees at least 1.5 times their regular rates of pay for all the hours they worked in excess of 40 a workweek.

115. Kiewit's failure to pay Robinson and the other Hourly Employees overtime at the required rate for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

116. Kiewit knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful pre/post shift off the clock policy that deprived Robinson and the other Hourly Employees of overtime wages at the required rate of pay for all hours worked after 40 a workweek, in violation of the FLSA.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

117. Robinson brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

118. Kiewit violated, and is violating, the FLSA by employing non-exempt employees, such as Robinson and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

119. Kiewit's unlawful conduct harmed Robinson and the other Hourly Employees by depriving them of the overtime wages they are owed.

120. Accordingly, Kiewit owes Robinson and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

121. Because Kiewit knew or showed reckless disregard for whether its pre/post shift off the clock policy violated the FLSA, Kiewit owes Robinson and the other Hourly Employees these wages for at least the past 3 years.

122. Kiewit is also liable to Robinson and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

123. Finally, Robinson and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME UNDER THE AWHA
### (ALASKA CLASS)

124. Robinson brings his AWHA claims as a class action on behalf of himself and the other Alaska Class Members pursuant to FED. R. CIV. P 23.

125. At all relevant times, Kiewit was an "employer" within the meaning of the AWHA. *See* AS § 23.10.145.

126. At all relevant times, Kiewit employed Robinson and the other Alaska Class Members as covered "employees" within the meaning of the AWHA. *See* AS § 23.10.145.

127. The AWHA requires employers, like Kiewit, to pay employees, including Robinson and the other Alaska Class Members, overtime wages at rates of at least 1.5 times the employee's regular rate of pay—based on all renumeration—for all hours worked after 8 in a workday and 40 in a workweek. *See* AS § 23.10.060.

128. Kiewit violated, and is violating, the AWHA by employing the Alaska Class Members in a covered enterprise for workdays longer than 8 hours and workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all renumeration—for the hours they worked after 8 in a workday and 40 in a workweek.

129.  Kiewit's unlawful conduct harmed Robinson and the other Alaska Class Members by depriving them of the overtime wages they are owed.

130.  Accordingly, Robinson and the Alaska Class Members are entitled to overtime wages under the AWHA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* AS § 23.10.110.

## JURY DEMAND

131.  Robinson demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Robinson, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

    b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

    c.    An Order appointing Robinson and his counsel to represent the interests of the Hourly Employees;

    d.    An Order pursuant to the AWHA finding Kiewit liable for unpaid overtime wages due to Robinson and the Alaska Class Members, plus liquidated damages in amount equal to their unpaid wages;

    e.    An Order finding Kiewit liable to Robinson and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

- 16 -

    f.    Judgment awarding Robinson and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any and other penalties available under the FLSA and AWHA;

    g.    An Order awarding attorneys' fees, costs, and expenses;

    h.    An Order awarding pre- and post-judgment interest at the highest applicable rates; and

    i.    Such other and further relief as may be necessary and appropriate.

- 17 -

Date:   March 31, 2025

Respectfully submitted,

**DOMINA LAW GROUP PC LLO**

By: /s/ *Brian E. Jorde*
Brian E. Jorde
Nebraska State Bar No. 23613
Christian T. Williams
Nebraska State Bar No. 25002
2425 South 144th Street
Omaha, Nebraska 68144
402-493-4100 – Telephone
402-493-9782 – Facsimile
bjorde@dominalaw.com
cwilliams@dominalaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLC**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR ROBINSON & THE HOURLY EMPLOYEES**